UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SONY MUSIC ENTERTAINMENT,
INC., ET AL.,**

    Plaintiffs,

v.                                 **No. 4:23-cv-00275-P**

**DANTREAL DAEVON CLARK-RAINBOLT,**

    Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiffs' Motion for Damages. ECF No. 33. Having considered the Motion, briefing, and applicable law, the Court determines the Motion should be and hereby is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiffs Sony Music Entertainment ("SME") and Sony Music Publishing (US) LLC ("SMP") (collectively, "Sony") sued Defendant Dantreal Daevon-Clark Rainbolt for copyright infringement in March 2023. Under the name "Trefuego," Defendant released the song *90mh*, which impermissibly sampled Sony's copyrighted work.[1] After multiple vain attempts to effectuate service, the Court allowed Sony to serve Defendant via social media direct messaging. Even after Sony perfected service, Defendant evaded communications related to this lawsuit and ignored the Court's orders.

Sony moved for judgment on the pleadings last October, which the Court granted in November. In doing so, the Court found Defendant liable for copyright infringement as set forth in Counts I-VI of Sony's

---

[1] The relevant work is *Reflections* by Japanese composer Toshifumi Hinata. SME owns copyrights in the sound recording; SMP's copyrights cover the composition itself. *See generally* U.S. COPYRIGHT REGISTRY, NOS. SR0000941927, PA0002379996.

Complaint. The Court then ordered Sony to file an appropriate motion for damages, fees, and costs. Sony did, filing the present Motion on December 29, 2023. Appearing *pro se*, Defendant filed a liberally construed brief in opposition to Sony's Motion on January 10, 2024.

## LEGAL STANDARD

Owners of an infringed copyright are entitled to "the actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433–34 (1984) ("The Copyright Act provides the owner of a copyright with a potent arsenal of remedies against an infringer of his work, including an injunction to restrain the infringer from violating his rights, the impoundment and destruction of all reproductions of his work made in violation of his rights, a recovery of his actual damages and any additional profits realized by the infringer or a recovery of statutory damages, and attorneys fees."). Infringement damages are always assessed "within the broad discretion of the trial court." *Broadcast Music, Inc. v. Tex Border Mgmt., Inc.*, 11 F. Supp. 3d 689, 697 (N.D. Tex. 2014) (Ramirez, M.J.).

The Court also has discretion to "allow the recovery of full costs" incurred by the prevailing party. 17 U.S.C. § 505. There is "no precise formula" for awarding fees or costs, but courts routinely consider several factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of a case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *see also Stygian Songs v. Johnson*, 776 F. Supp. 2d 233, 238 (N.D. Tex. 2011) (Means, J.) (collecting cases) (noting the Court must award remedies that "compensate for past infringements" and "guard[] against future infringements" while recalling that "[t]he purpose of copyright law is to promote and protect creativity"). As with damages, the Court has "broad discretion" to determine an appropriate award of fees or costs. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208 (2016).

## ANALYSIS

Sony seeks $802,997.23 in damages, $2,230.67 in costs, a permanent injunction against future infringement of its copyrights, and a percentage of future profits attributable to Defendant's infringement. *See* ECF No. 33 at 10–17. The Court takes each request in turn.

### A. Sony is entitled to $802,997.23 in damages.

The Copyright Act entitles Sony to either statutory damages or actual damages, plus any additional profits traceable to Defendant's infringement of the copyrighted work. *See* 17 U.S.C. § 504(b); *Sony*, 464 U.S. at 433–34. To evaluate actual damages, courts typically start by asking what the copyright owner would have hypothetically charged the infringer had the infringer attempted to license the work. *See MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 n.2 (5th Cir. 2010); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 648 (S.D. Tex. 2007) (Rosenthal, J.) (collecting cases). In terms of a hypothetical license fee, Sony says "SME would have required an up-front $10,000 payment plus 20% of revenues, and SMP would have required an upfront $2,500 payment plus 50% ownership in the copyright to the '90mh' musical composition." ECF No. 33 at 6. But that's only part of the picture. To evaluate Sony's total harm from Defendant's infringement, the Court may also consider "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).

"If the copyright owner chooses to claim infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *MGE UPS Sys.*, 622 F.3d at 366–67. Beyond the hypothetical license fee discussed above, Sony is entitled to profits from the $700,497.23 in revenue generated from *90mh*. *See id.*; *see also* ECF No. 34 at 67–69. And that's a conservative figure based only on the hard data Sony uncovered. Given Defendant's unresponsiveness to written discovery requests, Sony had to piece together revenue for the infringing

3

work via subpoenas to third parties and investigations of relevant streaming services. *See* ECF No. 34 at 5.

The record establishes at least $700,497.23 in revenue generated by the infringing work—$686,418.41 paid to Defendant and $14,078.82 held by his third-party distributor after the distributor learned of Sony's lawsuit. *See* ECF No. 34 at 67–69. Aggregating these amounts with SME's and SMP's lost license fees, Sony's breakdown is straightforward:

| Damages Category | Amount |
|---|---|
| SME's Lost License Fee | $150,099.45 |
| Trefuego's Additional Sound Recording Revenues | $550,397.78[3] |
| SMP's Lost License Fee | $102,500[4] |
| Trefuego's Additional Publishing Revenues | [Unknown] |
| **Total:** | **$802,997.23** |

*Id.* The second-row figure represents "the gross revenues generated by the sound recording, less SME's lost license fee," while the third-row figure represents "SMP's $2,500 up front fee + SMP's 50% share of the estimated $200,000 in U.S. Spotify & Apple publishing revenue." *Id.* at 6, n. 2–3.

Defendant's response brief did not meaningfully contest Sony's damages computation, much less identify applicable offsets. *See* ECF No. 39; *see also MGE UPS Sys.*, 622 F.3d at 366–67 (requiring infringers "to prove . . . deductible expenses and the elements of profit attributable to factors other than the copyrighted work"). While Defendant makes a compelling case that his infringement was unwilful, *see* ECF No. 39 at 2–3, willfulness only warrants a reduction where the copyright holder seeks statutory damages, rather than actual damages. *See Feltner v. Columbia Pictures Tel., Inc.*, 523 U.S. 340, 343 (1998); *see also* 17 U.S.C. § 504(c). Because the record establishes Sony's actual damages and Defendant's liability is beyond dispute, the Court **GRANTS** Sony's requested damages in their entirety. The Court now turns to their request for costs.

**B. Sony is entitled to $2,230.67 in costs.**

The Copyright Act also entitles Sony to attorneys' fees and costs. *See* 17 U.S.C. § 505. Because Defendant's infringement predates the registration of Sony's copyrights in *Reflections*, Sony does not seek its attorneys' fees. *See* ECF No. 33 at 6 n.1. For costs, the record shows Sony has incurred $2,230.67 in taxable costs over the course of this litigation. *See* ECF Nos. 33 at 14; 34 at 5. In its discretion, the Court may "allow the recovery of full costs" to the prevailing party in an infringement case. 17 U.S.C. § 505. To determine the propriety of such costs, the Court considers the following non-exhaustive factors: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of a case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19. Those factors support full recovery of Sony's costs here.

In this case, Sony pursued a reasonable, non-frivolous claim to vindicate infringement of its copyrighted work. *See* ECF No. 25. Some may query the wisdom of pursuing a claim against a relatively small fish like Trefuego, but that fact does not render Sony's motivation improper or their lawsuit unreasonable. *See generally Johnson*, 776 F. Supp. 2d at 237–39 (examining the scope and profitability of the infringing work to determine a claim's reasonableness). In fact, the only unreasonable behavior in this case was Defendant's, as his consistent attempts to evade service and eschew meaningful communications stymied case progress and drove up Sony's costs. *See* ECF No. 18. The Court hopes this serves as a lesson for Defendant and similarly situated litigants: the Court is sympathetic to Defendant's willfulness arguments and could have appointed mediators and/or legal counsel to assist Defendant in raising this argument or otherwise pursuing an efficient resolution of Sony's claim.

While it can be daunting for many defendants to appear in federal court or respond to service of process, the only *wrong* answer in such circumstances is refusal to respond or to comply with court orders. You can run from process servers, but you can't hide from the law. Because Defendant attempted to do so, his behavior was "objectively unreasonable," and a full award of costs will serve to "advance

consideration of . . . deterrence" under the circumstances of this case. *Fogerty*, 510 U.S. at 534 n.19. Defendant drove up Sony's costs; now he has to pay them. Because such costs are recoverable under 17 U.S.C. § 505, the Court **GRANTS** Sony's request for costs in its entirety.

### C. Sony fails to establish the required grounds for the permanent injunction it seeks.

In addition to damages and costs, Sony asks the Court to "permanently enjoin[] [Defendant] from copying, performing, or otherwise exploiting '90mh' in any manner." ECF No. 33 at 16. Sony provided no briefing on this request, and the Court is mindful that an injunction "is not a remedy which issues as of course." *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337–38 (1933). Nevertheless, Sony's request is backed by clearly established law. *See, e.g.*, 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.").

In infringement cases, "[c]ourts have traditionally granted permanent injunctions[] if liability is established and a continuing threat to the copyright exists." *Fermata Intern. Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1262 (S.D. Tex. 1989) (Hittner, J.) (collecting cases). Defendant's liability has been established here. *See* ECF No. 25. And Defendant's consistent unresponsiveness and evasive maneuvers—as well as his defiance of this Court's orders— suggest Sony's copyrights may be continuously imperiled without permanent injunctive relief. However, as explained below, the Court shares many of Defendant's reservations regarding Sony's requested injunction. *See* ECF No. 3 at 2.

"The purpose of copyright law is to promote and protect creativity." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999). While injunctions are extraordinary remedies and are typically disfavored, that fundamental purpose is disserved if the Court does not ensure Sony's copyrights are protected moving forward. *See id.*; *see also EMI April Music, Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 624 n.17 (N.D. Tex. 2008) (Lynn, J.) (collecting cases). But that purpose is

equally disserved if the Court grants an injunction broader than necessary to remedy infringement, especially if an injunction may have a chilling effect on future creative expression. In this regard, "[i]t is well established that a plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023). And Sony's requested remedy goes further than necessary considering the facts of this case.

Sony's request for injunctive relief has two prongs. *First*, Sony asks the Court to "permanently enoin[] [Defendant] from copying, performing, or otherwise exploiting '90mh' in any manner." ECF No. 33 at 16. Should Defendant fail to comply with that injunction, Sony asks the Court to award "50% of Defendant's future revenues connected to the '90mh' musical composition" to SMP as part of SMP's actual damages. *Id.* Likewise, Sony asks the Court to award "20% of Defendant's future revenues connected to the '90mh' sound recording" to SME as part of SME's actual damages. *Id. Second*, Sony asks the Court to require Defendant to "register with the American Society of Composers, Authors and Publishers ("ASCAP") and provide any resulting earnings to Plaintiff [SMP] as part of SMP's damages pursuant to 17 U.S.C. § 504(b)." *Id.* The Court addresses both prongs of Sony's requested injunction below.

1. <u>Sony's proposed injunction is unnecessary because damages mitigate the risk and remedy the harm of any future infringement.</u>

"To establish entitlement to permanent injunctive relief in copyright infringement cases, the party seeking the injunction must demonstrate the following: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest." *Broadcast Music*, 11 F. Supp. 3d at 696 (internal quotation marks and citations omitted). In the infringement context, these standard injunctive-relief factors are evaluated with an eye toward preventing future infringements. "In short, an injunction is appropriate if liability has been established *and* if there is a continuing threat of future

infringement of Plaintiffs' copyrights." *Id.* (citing *Fermata*, 712 F. Supp. at 1262).

There is a degree of tension in the Court's precedents on this point. On the one hand, "[c]ourts have traditionally granted permanent injunctions[] if liability is established and a continuing threat to the copyright exists." *Fermata*, 712 F. Supp. at 1262. On the other, injunctions are extraordinary remedies and are inappropriate absent a showing of irreparable harm. *See Broadcast Music*, 11 F. Supp. 3d at 696; *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is *irreparable*. Mere injuries, however substantial, . . . are not enough. The possibility that adequate compensatory or other relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."). Sony's request typifies this issue: in the very same pleading, Sony requests a permanent injunction (which requires an irreparable injury) and pleads alternative damages should Defendant fail to comply (which shows the injury is reparable). For these reasons, the Court must deny such extraordinary equitable relief here.

In many respects, this case mirrors the facts in *Broadcast Music*, where the court denied injunctive relief. *See* 11 F. Supp. 3d at 697. In that case, the court noted that "past willful infringements [] do[] not establish a continuing threat of future infringement." *Id.* Here, Defendant makes a compelling case that his infringements of Sony's copyrights were not willful. *See* ECF Nos. 20, 39. While his evasiveness in litigation gives cause for concern regarding his willingness to comply with the law, such evasiveness does not prove Defendant will continue to infringe Sony's copyrights—especially considering the sizable damages he'll now have to pay for his infringement. In this regard, the Court hopes this case will serve as a $802,997.23 lesson for Defendant in carefully selecting the materials included in his raps.

Still, *90mh* is publicly available on streaming platforms and Trefuego continues performing, which puts Sony's copyrights in jeopardy. *See* ECF No. 33 at 7. The Court would chill future creative expression and undermine the fundamental purposes of copyright law if it enjoined Defendant from any future use of *90mh*. But the Court is dutybound to protect Sony's intellectual property. *Johnson*, 776 F. Supp. 2d at 238.

This duty is satisfied by Sony's alternative request for damages in the event of future infringement. *See* ECF No. 33 at 16. Accordingly, because the pleadings establish that damages would remedy any future harm, the Court **DENIES** the injunction Sony requests. However, insofar as Sony's copyrights are jeopardized by *90mh*'s public availability, some form of injunctive relief is appropriate. "In shaping equity decrees, the trial court is vested with broad discretionary power." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) (citation omitted). Exercising that discretion here, the Court **ORDERS** as follows:

> Defendant Dantreal Daevon-Clark Rainbolt is **PERMANENTLY ENJOINED** from copying, performing or otherwise exploiting *90mh* without (1) paying 50% of revenues connected to the *90mh* musical composition to Plaintiff Sony Music Publishing (US) LLC, and (2) paying 20% of revenues connected to the *90mh* sound recording to Plaintiff Sony Music Entertainment. Nothing herein shall be construed as limiting or otherwise altering the Parties' ability to contract for additional terms and conditions related to Defendant's continued copying, performing, or exploitation of the relevant track. **In the event that a subsequently executed agreement among the Parties differs from a condition set herein, such as in the permitted scope of Defendant's use of *90mh* or in the percentages to be paid to Plaintiffs for such use, the terms and conditions of the contract shall supersede and override the terms of this Order.**

The Court now turns to Sony's request that the Court force Defendant to register with ASCAP as part of his overarching damages obligation.

2.  Requiring Defendant to register with ASCAP is unnecessary to prevent future infringement.

The second prong of Sony's requested injunction would force Defendant to register with ASCAP and provide any resulting earnings from past infringement to the appropriate plaintiff. *See* ECF No. 33 at 16. Defendant objects that this requirement "infringes upon [his] autonomy and potentially exceeds the alleged infringement's scope." ECF No. 39 at 2. The first objection holds no water, as every injunction necessarily "infringes the autonomy" of the enjoined party; that unavoidable consequence does not speak to the injunction's propriety.

9

But the second objection merits careful consideration, as "a plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Cargill*, 57 F.4th at 472.

The Copyright Act empowers the Court to issue "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Under the express terms of the Act, the proposed injunction must be reasonable to the specific goal of *preventing/restraining copyright infringement*. Here, Sony's proposal would perhaps uncover additional damages, but nothing in the pleadings suggests it is necessary to prevent or restrain further infringement of Sony's copyrights—particularly considering the Court's award of damages and costs and its injunction vis-à-vis continued use of *90mh* without compensation to Sony. Injunctions are an "extraordinary remedy" that are "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As such, plaintiffs don't get an injunction merely because it would be a good idea; they must make an exacting showing that the remedy is necessary. *See id.* Because Sony has not done so here, the Court **DENIES** its second proposal for injunctive relief.

## CONCLUSION

For the reasons discussed above, the Court determines that Sony's Motion (ECF No. 33) should be and hereby is **GRANTED in part** and **DENIED in part**. Accordingly, the Court **ORDERS** as follows:

- Plaintiffs are awarded **$802,997.23 in damages**, including the $14,078.82 currently being held by third-party distributor DistroKid;

- Plaintiffs are awarded **$2,230.67 in costs**; and

- Defendant Dantreal Daevon-Clark Rainbolt is **PERMANENTLY ENJOINED** from copying, performing or otherwise exploiting *90mh* without (1) paying 50% of revenues connected to the *90mh* musical composition to Plaintiff Sony Music Publishing (US) LLC, and (2) paying 20% of revenues connected to the *90mh* sound recording to Plaintiff Sony Music Entertainment. Nothing herein shall be construed as limiting or otherwise altering the Parties' ability to

contract for additional terms and conditions related to Defendant's continued copying, performing, or exploitation of the relevant track. **<u>In the event that a subsequently executed agreement among the Parties differs from a condition set herein, such as in the permitted scope of Defendant's use of _90mh_ or in the percentages to be paid to Plaintiffs for such use, the terms and conditions of the contract shall supersede and override the terms of this Order.</u>**

**SO ORDERED** on this **27th day** of **March 2024.**

_[signature]_

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

11